UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SAMANTHA B., : | |
|     Plaintiff, : | |
| : | |
| v. : | C.A. No. 25-00004MSM |
| : | |
| FRANK BISIGNANO, : | |
| Commissioner of the Social Security : | |
| Administration, : | |
|     Defendant. : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On May 20, 2022, Plaintiff Samatha B., a "younger" individual then twenty-two years old, filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff is a high school graduate who has worked only once, parttime at a daycare facility from October 2017 to January 2020. Tr. 127. This job ended on January 29, 2020, due to Plaintiff's anxiety, which impacted her ability to perform. Tr. 127-28. Alleging onset as of that day, Plaintiff alleges that she has been disabled due to autism, pervasive developmental delay, generalized anxiety disorder, major depressive disorder, post-traumatic stress syndrome and plantar fasciitis.

At Step Two, an administrative law judge ("ALJ") agreed that depressive disorder, anxiety disorder and autism are severe impairments, but that plantar fasciitis and Plaintiff's other physical conditions are not.[1] Tr. 87. At Step Three, the ALJ found that Plaintiff's severe mental impairments moderately impact the ability to work and therefore do not meet or equal the criteria of any Listing. Tr. 88-90. Considering what the ALJ found to be the persuasive administrative

---

[1] Plaintiff does not dispute the ALJ's Step Two determinations.

findings of the non-examining expert psychologists (Dr. Ryan Haggarty and Dr. Jeffrey Hughes) and what the ALJ found to be the persuasive portions of the opinion of the treating psychiatric nurse practitioner, NP Arielle Rounds, but rejecting as unpersuasive the opinions of the primary care provider, family nurse practitioner, NP Kristen Snow, and discounting Plaintiff's subjective statements, the ALJ found that Plaintiff retains the RFC[2] physically to perform a full range of work at all exertional levels except for environmental limits, but that mentally she is limited to work involving simple instructions and tasks with occasional interaction with the public and coworkers, frequent interaction with supervisors, no tandem work with coworkers, and only occasional changes in a routine work setting. Tr. 90. In reliance on testimony from a vocational expert ("VE"), the ALJ found that Plaintiff was not disabled at any relevant time. Tr. 110-11.

Now pending before the Court is Plaintiff's motion to reverse the decision of the Commissioner denying her SSI/DIB applications. ECF No. 10. The principal foundation for Plaintiff's motion is the ALJ's allegedly improper reliance on the non-examining experts who were not privy to most[3] of the medical evidence, which seriously detracts from their findings. Relatedly, Plaintiff challenges the ALJ's lay interpretation of this complex medical evidence. It includes all of the treating records from Illuminate Life Counseling ("Illuminate"), where Plaintiff had weekly therapy sessions from September 2021 through December 2022 with Dr. Katherine Kinsella and therapist Nicole Minisce; all of the treating records and the opinion of NP Rounds, who medically managed psychiatric medication beginning in February 2023; all of the

---

[2] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[3] The portion of the medical evidence that the non-examining experts saw consists of approximately 150 pages. The portion that they did not see is approximately 180 pages. That is, the experts saw less than half of the entire record that was reviewed and relied on by the ALJ.

treating records and the opinion of NP Snow, who began regular appointments with Plaintiff in October 2022; and the 2023 treating records of psychologist Dr. Chelsea Tucker. Based on these errors, Plaintiff contends that the ALJ erroneously accepted the findings of Dr. Ryan Haggarty and Dr. Jeffrey Hughes, the non-examining psychologists, which lack the support of substantial evidence, and erroneously rejected the entirety of NP Snow's opinion and the portion of NP Rounds' opinion that finds occasional impairment with social functioning. Plaintiff also challenges what she alleges is the ALJ's erroneous decision to discount her statements about the impact of anxiety and social phobia on her ability to perform work outside the home.

Defendant has filed a counter motion for an order affirming the Commissioner's decision. ECF No. 12. Both motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     Background**

As a young child, Plaintiff was diagnosed with autism spectrum disorder. Tr. 405. From the age of thirteen, she started taking medication for anxiety and receiving (on and off) outpatient mental health treatment. Id. Her education was delivered pursuant to an Individualized Education Plan. Tr. 537. After completing high school, Plaintiff began working with the Office of Rehabilitative Services ("ORS"); in October 2017, as her attorney noted, through ORS, she started working parttime at a daycare center. Tr. 125, 127. Based on this job, in 2017, she earned $373; in 2018, she earned $6,056; in 2019, she earned $10,088; the job ended in January 2020 after she had earned $576. Tr. 311. Plaintiff alleges that she could not handle the responsibility and stress of this job. Tr. 128, 139. As corroborated by the medical record, due to anxiety, in 2019 she took a leave to "regroup" (as her attorney described) and returned to try again. Tr. 125, 139; see Tr. 485 (in April 2019, physician notes that gastric symptoms over two

weeks "mostly stemmed from issues at work . . . ready to return to work in 4 days[, h]ad meeting with employer agrees to reduced schedule and make accommodations"). Ultimately, Plaintiff quit on January 29, 2020, (the alleged onset date) after being left alone in charge of seven children. Tr. 128. The stress of that experience triggered one of the most severe panic attacks (including shaking and vomiting) she had ever had. Tr. 345 (Plaintiff described the event and stated "I was having a full panic attack, I was physically shaking and vomiting"), Tr. 401 (treating provider notes "severe panic attack" at work and recommends that Plaintiff stay out for "the time being" and that Plaintiff seek work based on "short hours so she is not overwhelmed"; "C[lien]t easily seems to get anxious and overwhelmed if too much is put in her plate at work causing anxiety.").

After the daycare job ended, Plaintiff continued working with mental health professionals and with job programs to try to resume working but was not successful. Tr. 136, see Tr. 554. Thus, over a year of intensive therapy focused in significant part on Plaintiff's anxiety and social phobia, which were preventing her from working ("to address stress of getting job and training program"), Plaintiff's Illuminate therapists (Dr. Kinsella and Ms. Minisce) noted the following observations and clinically relevant statements:

- "Client appeared to be avoidant towards any conversation related to employment," Tr. 553;

- "I decided to just stop answering the employment service because I can't handle how anxious it all makes me," Tr. 554;

- "I felt very anxious the entire time I was at work and decided not to go back," Tr. 557;

- "Client appeared to be too distressed to consider looking for other employment opportunities," Tr. 556;

- "I haven't been eating which is how I knew I couldn't go back to work," Tr. 557;

4

- "I am supposed to start new job . . . on Monday, but cannot stop worrying about it."  Tr. 560.

See Tr. 553-68.  These therapy notes also consistently record significantly abnormal MSEs,[4] including objective observations of agitation, fleeting eye contact and anxious face, flighty thought content, perseverative thoughts, and poor insight.  Id.  After Plaintiff switched from Illuminate, her next therapist (Dr. Tucker) similarly noted that Plaintiff "presented as anxious," as well as that "cl[ien]t went to work for one day, felt overwhelmed, and quit."  Tr. 730.

In addition to the specific focus on employment, Plaintiff's treatment has also focused more broadly on social anxiety, which is triggered by such innocuous events as a passing encounter with a former schoolmate.  E.g., Tr. 536 (client had difficulty completing therapeutic social exposure – making phone calls, ordering food – in CBT due to severity of anxiety); Tr. 723 (psychologist notes, "she is irrationally afraid for her safety . . . feels so socially anx[ious], she panics"); Tr. 729 (psychologist notes progress based on Plaintiff's seeing man she knew from high school at pizza place without having panic attack); Tr. 732 (psychologist notes anxiety triggered by eating in restaurant with her mother).  Therapy also has focused on Plaintiff's fear of eating any foods outside of a narrow band of choices.  E.g., Tr. 435 ("eats very limited diet which increases her anxiety because she wants to eat more variety"); Tr. 647 ("picky eater"); Tr. 689 ("patient being enrolled in a food exposure therapy program that will help with her texture/sensory problems.  Reports being a very picky eater due to this.").

In the portion of the record presented for review by the non-examining experts – Dr. Haggarty and Dr. Hughes – is a clinical psychological evaluation administered in June 2020

---

[4] The mental status examination or "MSE" is an objective clinical assessment of an individual's mental ability, based on a health professional's observations.  June B. v. Bisignano, C.A. No. 24-245-MRD, 2025 WL 1939087, at *1 n.2 (D.R.I. July 14, 2025), adopted by text order (D.R.I. July 30, 2025); Nancy T. v. Kijakazi, C.A. No. 20-420WES, 2022 WL 682486, at *5 n.7 (D.R.I. Mar. 7, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

5

when Plaintiff was twenty-one by Dr. Andrea Lavigne. Tr. 405-17. Dr. Lavigne confirmed the childhood diagnosis of autism, and also diagnosed anxiety and depression; cognitive testing established scores in the extremely low to average ranges, with low average full scale IQ and test scores confirming difficulty with social skills. Tr. 407-12. Dr. Lavigne noted that the severity of the objectively observed anxiety may have caused an underestimation of Plaintiff's true potential. Tr. 407. Also, in the file-review set of documents is similar testing performed in August 2022 by Dr. Jonathan Gershon and Dr. Amanda Connerton; like Dr. Lavigne, they endorsed autism, anxiety and depression as diagnoses, with low average full scale IQ and "very elevated" social phobia. Tr. 537-41.

Apart from the Lavigne/Gershon reports, the portion of the record seen by the non-examining experts is quite limited.[5] It includes[6] the primary care records of Dr. Mark Rosenberg, who noted Plaintiff's anxiety, depression, sensory processing difficulties, mood swings, limited diet (in terms of food choices) causing weight loss, attempts to work, and ongoing struggle to find psychiatric care (reflected in changing providers), but Dr. Rosenberg did not directly provide mental health treatment. Tr. 426-514. For psychiatric care, the file-review set includes a handful of notes of three appointments with social worker Tracey Wendoloski from late 2019 and early 2020, which record Plaintiff's lack of friends and her participation with ORS for job placement but make mostly normal MSE findings. Tr. 396-404. And it includes the August 2020 to December 2022 treating notes from a physician assistant, PA Christine Paleczny,

---

[5] Some puzzling omissions for the period of the non-examining file review are the missing weekly treating records of psychologist Dr. Chelsea Tucker from September 2020 through September 2021, which are mentioned in Dr. Tucker's letter of July 15, 2022. Tr. 536. Also missing are records reflecting Plaintiff's participation in IOP at Butler Hospital in April and May 2021. Id. Because neither party has explained or even mentioned these omissions, the Court has made no assumptions about why they are missing; specifically, the Court does not find that the ALJ failed to develop the record by failing to take steps to procure them.

[6] This portion of the record also includes the podiatrist's records, which relate to treatment of plantar fasciitis and are not in issue. Tr. 418-25.

at Angell Street Psychiatry, whose appointments after intake (at which the evaluation was completed by a student) are noted as "NOV [nature of visit]: 15 min med mangmnt md" or (for the last four appointments) "NOV: Med mangmnt md." Tr. 515-35, 545-49. These appointments range from once a month to every six months; despite MSEs with consistently normal findings, PA Paleczny kept adjusting medication at most, but not all appointments. Id.

The balance of the record was not seen by the non-examining experts. Thus, for much of the same period covered by the non-examining experts' file review (when Plaintiff was receiving medication management from Angell Street Psychiatry), Plaintiff was also receiving far more intensive CBT therapy from Dr. Kinsella and Ms. Minisce at Illuminate. Tr. 550-651. Unlike the Angell Street appointments, these encounters were weekly, and the notes include detailed and consistently abnormal MSE observations, including such "objective" notations as "Client appeared to be avoidant towards any conversation related to employment" and "Client appeared to be too distressed to consider looking for other employment opportunities." Tr. 553, 556. Much of this therapy was focused on Plaintiff's anxiety about work or even working with a work program; these notes record clinically significant statements (see *supra*) by Plaintiff about the severity and intensity of her anxiety regarding employment. None of the Illuminate material was seen by the non-examining experts.

The non-examining experts also did not see any of the records of NP Snow, which includes a serious exacerbation of symptoms in January 2023. Tr. 677-80. Nor did they see NP Snow's opinion that Plaintiff's anxiety and social phobia would frequently render her unable to function socially or to respond appropriately to work pressure, resulting in work-preclusive off-task time and absence. Tr. 660-63. Nor did they see the resumed treatment with psychologist Dr. Tucker, whose diagnoses include social phobia and whose notes reflect Plaintiff's

7

"irrational" fear of going outside due to her social anxiety resulting in panic attacks triggered by otherwise normal interactions.  Tr. 723-36.

## II. **Standard of Review**

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  Biestek v. Berryhill, 587 U.S. 97, 103 (2019).  Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding.  Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103).  Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).  The determination of substantiality is based upon an evaluation of the record as a whole.  Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2020) (per curiam); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).

The Commissioner's factual findings, "if supported by substantial evidence, shall be conclusive. . . because the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ." I.A. v. Comm'r of Soc. Sec. Admin., Civil Action No. 23-10170-FDS, 2024 WL 38746, at *4 (D. Mass. Jan. 3, 2024) (internal quotation marks and citation omitted), aff'd sub nom. Askew v. O'Malley, No. 24-1051, 2024 WL 4362258 (1st Cir. Sept. 23, 2024). The Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022). If the Court concludes that the ALJ erred, it is empowered to enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing. Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020).

### III. Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i); 20 C.F.R. § 404.1505.[7] The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-06, 1509-11.

#### A. The Five-Step Evaluation

---

[7] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI. See McDonald v. Sec'y of Health & Hum. Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, I cite only to one set of these regulations.

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520(a).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Id. § 404.1520(a)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Id. § 404.1520(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id. § 404.1520(a)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Id. § 404.1520(a)(4)(v).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski, 959 F.3d at 434; Wells v. Barnhart, 267 F. Supp. 2d 138, 143-44 (D. Mass. 2003) (five-step process applies to SSI and DIB claims).

**B.   Opinion Evidence**

An ALJ must consider the persuasiveness of all medical opinions and prior administrative medical findings by Social Security experts in the claimant's case record.  20 C.F.R. § 404.1520c; see 20 C.F.R. § 1513a(b)(1) ("our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation").  The most important factors to be considered when the Commissioner evaluates the persuasiveness of these medical opinions are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  Id. § 404.1520c(b)(2); Katheryn H. v. King, C.A. No. 24-cv-253-JJM-LDA, 2025 WL 521137, at *3-4 (D.R.I. Feb. 18, 2025).  Supportability "includes an assessment

10

of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017). Other factors that are weighed in light of all of the evidence in the record include the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding. See 20 C.F.R. § 404.1520c(c)(1)-(5). "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854.

In considering whether and to what extent to rely on medical/expert opinions, the ALJ may pick and choose among portions of them, finding parts persuasive and other parts less so. Smith v. Colvin, No. 2:14-cv-429-JHR, 2015 WL 4391420, at *5 (D. Me. July 15, 2015). Nevertheless, if a portion of an expert opinion is rejected as less persuasive, the ALJ must state her reason, which must be based on substantial evidence of record. See 20 C.F.R. § 404.1520c(b). However, the ALJ's duty to "articulate how [she] considered the medical opinions and prior administrative medical findings" is not onerous. 20 C.F.R. § 404.1520c(a); see Warnell v. O'Malley, 97 F.4th 1050, 1053 (7th Cir. 2024). In assessing the ALJ's articulation, the Court must remain mindful that its role is not to reweigh the evidence, even if it might have come to a different conclusion. See Thomas P., 2022 WL 92651, at *8.

Medical experts' opinions and findings are not substantial evidence and cannot be relied upon if the experts were not "privy to parts of [plaintiff's] medical record (which) detracts from the weight that can be afforded their opinions." Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *7 (D.R.I. Apr. 4, 2024) (internal quotation marks omitted)

11

(alterations in original), adopted, 2020 WL 555186 (D.R.I. Feb. 4, 2020).  In particular, an ALJ cannot rely on a medical expert's opinion if the expert did not see documents indicating that the claimant's condition is materially different from what the expert found based on what he did see. Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018). Thus, substantial evidence of material symptom worsening that the non-examining experts did not see requires remand.  Sandra C. v. Saul, C.A. No. 18-375JJM, 2019 WL 4127363, at *6 (D.R.I. Aug. 30, 2019), adopted by text order (D.R.I. Sept. 16, 2019).  Put differently, if the "[c]ourt does not know whether the non-examining state agency physicians would have rendered the same . . . opinions if they had all of the medical evidence," remand is necessary.  Mary K. v. Berryhill, 317 F. Supp. 3d 664, 668 (D.R.I. 2018); see Kayla G. v. Kijakazi, C.A. No. 21-443PAS, 2022 WL 3368600, at *2 (D.R.I. Aug. 16, 2022).

On the other hand, it is also well settled that an ALJ may rely on non-examining expert findings, despite post-file-review evidence, as long as the ALJ considered the post-file-review evidence and makes a commonsense finding that the pre-and post-file-review records are sufficiently similar such that the post-file review material does not detract from the weight to be afforded to the expert findings.  Jennifer F. v. Saul, C.A. No. 19-547MSM, 2020 WL 6488706, at *6-7 (D.R.I. Sept. 16, 2020), adopted, 2020 WL 6487813 (D.R.I. Nov. 4, 2020); Michele S. v. Saul, C.A. No. 19-65WES, 2019 WL 6242655, at *8 (D.R.I. Nov. 22, 2019), adopted by text order (D.R.I. Dec. 13, 2019).  To hold otherwise would render such opinions irrelevant because of the practical impossibility that such experts can be privy to updated medical records.  Sanford v. Astrue, No. CA 07-183 M, 2009 WL 866845, at *8 (D.R.I. Mar. 30, 2009).  It is well settled that this approach "would defy logic and be a formula for paralysis."  Id.  That is, expert/medical opinions may not be rejected as stale unless the claimant sustains his burden of demonstrating

that the post-file-review evidence reveals disablingly severe symptoms or symptom worsening that the ALJ ignored.  Jennifer F. v. Saul, C.A. No. 19-547MSM, 2020 WL 6488706, at *6 (D.R.I. Sept. 16, 2020), adopted 2020 WL 6487813 (D.R.I. Nov. 4, 2020).

### C.     Subjective Statements

A reviewing court will not disturb a clearly articulated credibility finding based on substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  Guidance in evaluating the claimant's statements regarding the intensity, persistence and limiting effects of subjective symptoms, including pain, is provided by SSR 16-3p, 2017 WL 5180304, at *2-4, which directs the ALJ to consider the entire case record, including the objective medical evidence, the individual's statements, other information and statements provided by medical sources and other persons, and any other relevant evidence, as well as whether the subjective statements are consistent with the medical signs and laboratory findings.  Id. at *2-5.  As the First Circuit has emphasized, in the absence of direct evidence to rebut a claimant's testimony about subjective symptoms or other reason to question their credibility, such statements should be taken as true.  Sacilowski, 959 F.3d at 441.  Thus, if proof of disability is based on subjective evidence and a credibility determination is critical to the decision, the subjective statements must either be explicitly discredited or the implication of lack of credibility must be so clear as to amount to a specific credibility finding.  Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *4 (D.R.I. Sept. 2, 2021), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021).

### IV.    Analysis and Recommendation

As with Andrea T. v. Saul, C.A. No. 19-505WES, 2020 WL 2115898, at *5-7 (D.R.I. May 4, 2020), this case may quickly be resolved by the well-settled proposition that remand is

required when "the state-agency physicians were not privy to parts of [plaintiff's] medical record [which] detracts from the weight that can be afforded their opinions." Elizabeth V., 2024 WL 1460354, at *7; see Sandra C. v. Saul, C.A. No. 18-375JJM, 2019 WL 4127363, at *6 (D.R.I. Aug. 30, 2019) ("Remand is necessary to allow for an error-free evaluation of the complete record."). As Virgen C. makes clear, an ALJ cannot rely on a file reviewer's opinion if records submitted after the review seriously undermines the foundation for the reviewer's findings. 2018 WL 4693954, at *3 ("[I]f a state-agency physician reviews only a partial record, her 'opinion cannot provide substantial evidence to support [an] ALJ's residual functional capacity assessment if later evidence supports the claimant's limitations.'") (quoting Ledoux v. Acting Comm'r, Soc. Sec. Admin., Civil No. 17-cv-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018)).

By deciding not to call a medical expert to interpret the medically complex Illuminate, Snow, Rounds and Tucker (2023) treating records and opinions, the ALJ was left to deploy his lay judgment as the interpretative tool, both at Step Three and to determine the RFC. The consistently abnormal MSEs and observations in the Illuminate, Snow and Tucker records, including such objective observations as, "Client appeared to be too distressed to consider looking for other employment opportunities," Tr. 556, "Psych: . . Tearful. Anxious.," Tr. 679, and "Cl[ien]t acknowledged that she is irrationally afraid for her safety," Tr. 723, materially clash with the non-examining experts' reliance on the Angell Street Psychiatry records, which reflect "[o]bjective/MSE findings [that] are normal," Tr. 152, 161, 171, 180. Thus, this case differs markedly from, for example, Michele S., 2019 WL 6242655, at *8, in which the Court found that the ALJ carefully reviewed the post-file review evidence and correctly made the common sense finding that the pre- and post-review records are similar so that there was no need

14

for an additional medical expert.  When, as here, the Court cannot find that the non-examining experts would have made the same findings if they had been privy to the entire record, remand is required for further proceedings.  Mary K., 317 F. Supp. 3d at 668 ("[c]ourt does not know whether the non-examining state agency physicians would have rendered the same Step 2 opinions if they had all of the medical evidence").

With remand required for further consideration of the post-file review evidence, both at Step Three and with respect to Plaintiff's RFC, in the interest of justice and fairness and mindful that the Act must be "liberally applied," Ferguson v. Colvin, 63 F. Supp. 3d 207, 211 (D.R.I. 2014), I recommend that the Court direct that the ALJ must consider the complete record, including the missing Tucker and Butler treating notes, if they can be procured (see n.5 supra). Finally, I find that much of the ALJ's reason for discounting Plaintiff's subjective statements (her ability to attend to personal needs, prepare meals and do chores inside the home) misses the point – that is, her ability to function inside her home or to go out alone without social encounters does not clash with her seemingly uncontradicted statements (in testimony, the function report and to treating providers) about her struggle with even minimal social encounters outside the home.  Therefore, I also recommend that the Court direct that, on remand, the ALJ reweigh the assessment of Plaintiff's subjective statements in light of the total evidence.  See Andrea T., 2020 WL 2115898, at *5-7.

A coda: while I find that the ALJ's RFC determination is seriously flawed requiring a remand for further proceedings as described above, I do not find that this is an unusual case where the proof is overwhelming, or that it is very strong and there is no contrary evidence.  See June B. v. Bisignano, C.A. No. 24-245-MRD, 2025 WL 1939087, at *8 (D.R.I. July 14, 2025), adopted by text order (D.R.I. July 30, 2025).  Rather, I find that this is a medically complex case

with a mixed record of normal and abnormal findings, including the many normal clinical findings on which the ALJ relied, as well as the complex and potentially contradictory opinion of NP Rounds. Therefore, I do not recommend that the Court remand for an award of benefits.

V.      **Conclusion**

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 12) be DENIED. Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation. See Fed. R. Civ. P. 72(b); DRI LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 24, 2025